UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TINA R. SIMERALE, | ) | Case No. 1:07CV3476 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | <u>MEMORANDUM OPINION & ORDER</u> |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). ECF Dkt. #1, 19. Plaintiff asserts that she was denied her constitutional right to due process and that the Administrative Law Judge (ALJ) committed error in relying upon the testimony of the medical expert. ECF Dkt. #19. She also complains that the ALJ violated the treating physician rule and improperly evaluated her credibility and complaints of pain. *Id.*

For the following reasons, the Court REMANDS this case so that the ALJ can first and foremost identify the "substance" that is the subject of his statements relating to Plaintiff's "continuing substance abuse" and "substance abuse disorder" that he finds in determining her residual functional capacity (RFC), her inability to perform past relevant work and whether jobs existed in the

1

national economy that she could perform. The Court further REMANDS the instant case for the ALJ to reevaluate, clarify and more thoroughly articulate and support his determinations relating to whether he relied upon the testimony of the medical expert and the part of the testimony upon which he relied, if any. The Court also REMANDS this case so that ALJ, using the proper standards, will reevaluate and better articulate the weight that he gives to the opinions of Drs. Takacs and Rodio. Finally, the Court REMANDS this case so that the ALJ, using the proper standards, can reevaluate and better articulate his discounting of Plaintiff's credibility, if he chooses to do so again.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 9, 2004 alleging disability beginning January 15, 2003 due to asthma, fibromyalgia, arthritis, scoliosis and depression. Tr. at 61-63, 609-611. The Social Security Administration (SSA) denied Plaintiff's applications and affirmed the denials upon reconsideration. *Id*. at 23-34. Plaintiff requested a hearing before an ALJ and a hearing was held on June 14, 2006. *Id.* at 35-37, 627. At the hearing, Plaintiff testified and was represented by counsel. *Id.* at 629-658. A medical expert and vocational expert also testified. *Id.* at 658-691.

On July 20, 2006, the ALJ denied Plaintiff's applications for DIB and SSI, finding that while she had the severe impairments of drug abuse disorder, major depressive disorder, and fibromyalgia, those impairments, individually or in combination with other impairments, did not meet or equal a listed impairment. Tr. at 16. The ALJ also found that "Plaintiff's substance abuse disorder(s)...is a contributing factor material to the determination of disability." *Id*. at 22. He concluded that if Plaintiff "stopped the substance abuse, the claimant would have the residual functional capacity (RFC) to do light level work with the option to alternately sit or stand with the following nonexertional limits: mentally limited to unskilled work with limited public contact in a relatively

low stress work environment." *Id*. at 18. In finding Plaintiff capable of performing this limited range of work, the ALJ rejected the opinions of some of Plaintiff's treating physicians and discounted Plaintiff's credibility and complaints of pain. *Id.*

Plaintiff, through her attorney, requested that the Appeals Council review the ALJ's decision. Tr. at 10. The Appeals Council denied the request for review, finding no basis for changing the ALJ's decision. *Id.* at 6-8.

On November 7, 2007, Plaintiff filed a timely complaint with this Court, and Defendant answered. ECF Dkt. #s 1, 12. Both parties have filed briefs addressing the merits of the case and Plaintiff has filed a reply. ECF Dkt. #s 19, 20, 22. At issue is the decision of the ALJ dated July 20, 2006, which stands as the final decision. Tr. at 13-22; 20 C.F.R. § 404.984.

## II. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the following sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### III.  STANDARD OF REVIEW

Under the SSA, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

The Sixth Circuit has held that "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . .This is because there is a 'zone of choice' within which the Commissioner can act without fear of

court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Therefore, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Moreover, this Court can remand a case under sentence four of 42 U.S.C. § 405(g), sentence six of 42 U.S.C. § 405(g), or under both of these sections. Sentence four provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence-four remand provides relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further factfinding is necessary. *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994), citing *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26 (1990). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986), citing *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551 (6th Cir. 1984).

An ALJ's decision may be reversed and benefits immediately awarded only if the record adequately establishes a plaintiff's entitlement to benefits. *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). The decision to deny benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See Faucher*, 17 F.3d 171, 176 (6th Cir. 1994). Where further factual issues remain, the case should be remanded for further factfinding. *See id.*

**IV.    ANALYSIS**

    **A.    MEDICAL EXPERT TESTIMONY**

Plaintiff asserts that the ALJ erroneously relied upon the testimony of the nonexamining medical expert in denying her claim on the basis of the materiality of her substance abuse. ECF Dkt. #19 at 13-15. Plaintiff contends that no physician, except Dr. Ross, the nonexamining medical expert, concluded that she was addicted to Methadone, which she receives to keep her opiate and heroin addictions in remission. *Id.* at 13-14. She asserts that the Dr. Ross' testimony that Methadone "is itself an opiate" and his testimony that Ativan, also taken by Plaintiff, "has the effect of potentiating opiates," and her other medications of Effexor and Trazodone are "going to be influenced by the use of narcotics," describes the side effects of Methadone but does not show that she is addicted to Methadone or any other drug. *Id.* at 14-15.

Defendant asserts that the ALJ "reasonably relied" upon the testimony of Dr. Ross and that Plaintiff misstates and misinterprets Dr. Ross' testimony. ECF Dkt. #20 at 9. Defendant concedes that no physician has found Plaintiff to be addicted to her Methadone treatment regime and he acknowledges that Methadone is a recognized treatment for opiate addiction. *Id*. However, Defendant contends that Dr. Ross was not opining that Plaintiff was addicted to the Methadone treatment, but rather, he noted her drug addiction history and indicated that the Methadone used for her treatment is an opiate which could affect her mental state. *Id*. at 10, citing Tr. at 659, 662-668. Defendant further asserts that the ALJ did not find that she was addicted to her Methadone treatment regime in finding that this addiction was a material factor in her disability. *Id*. at 10. Defendant postulates that the ALJ, relying upon Dr. Ross' testimony, concluded that her drug abuse disorder and alcoholism were material factors in determining her disability. *Id*., citing Tr. at 16-17.

The Court is troubled by the lack of clarity in the ALJ's decision. The ALJ reviewed Dr. Ross' testimony and noted that Dr. Ross had testified that Plaintiff has a major depressive disorder and a drug abuse disorder. Tr. at. 16. However, the ALJ fails to state whether he relies upon Dr.

-6-

Ross' testimony relating to Plaintiff's Methadone treatment program or whether he relies upon Dr. Ross' testimony that Plaintiff had a drug abuse disorder or what that drug abuse disorder is. The ALJ thereafter found that "Plaintiff's substance use disorders" did not meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 17. He then makes reference to Plaintiff's "continued use of drugs," and her "continuing substance use," and he then determined her RFC, inability to perform past relevant work and whether jobs existed in the national economy for her if she "stopped the substance use." *Id.* at 17-21. The ALJ fails to identify the "substance" which he generically uses to make these findings. Further, even if, as Defendant argues, Dr. Ross was not opining that Plaintiff was addicted to her Methadone treatment regime, the ALJ in fact characterizes his testimony as such, which presents further error if the ALJ relied upon Dr. Ross' testimony. The ALJ indicated that "[h]e (Dr. Ross) maintains that she continues to be an active addict because she is using the opiate Methadone." *Id.* at 16.

Because it is unclear whether the ALJ relied upon Dr. Ross' testimony, which part of the testimony he relied upon, and it is also unclear what the "substance" is that the ALJ is referring to throughout his entire decision, the Court REMANDS this case for further clarification of these matters. If a second hearing or more evidence is necessary to provide further clarification, the ALJ should act accordingly.

### B. TREATING PHYSICIAN RULE

Plaintiff also asserts that the ALJ violated the treating physician rule because he failed to provide good reasons for attributing lesser weight to the opinions of Dr. Takacs, Plaintiff's treating physician for fibromyalgia, and Dr. Rodio, Plaintiff's treating psychiatrist. ECF Dkt. #19 at 15-18.

### 1. **DR. TAKACS**

Plaintiff points to the June 9, 2006 opinion of Dr. Takacs and asserts that the ALJ's support for giving lesser weight to this opinion is a single medical report by Dr. Paras, an examining agency physician, whose findings and report were actually supportive of Dr. Takacs' June 9, 2006 opinions. *Id.* at 16. Plaintiff also complains that the ALJ was very selective in the evidence that he reviewed in order to attribute lesser weight to this opinion and he did not discuss the evidence that did support Dr. Takacs' opinions. *Id.*

On June 9, 2006, Dr. Takacs completed a fibromyalgia RFC form in which he noted that Plaintiff had been a patient since 1994 and Plaintiff met the American Rheumatological criteria for fibromyalgia because she had multiple tender points, irritable bowel syndrome, a history of widespread pain for three months, chronic fatigue, panic attacks, anxiety and depression. Tr. at 546. Dr. Takacs opined that Plaintiff's pain frequently interfered with her attention and concentration, she was incapable of even low stress work, and she could not sit, stand or walk for long periods of time. *Id.* He further found that Plaintiff would need to take unscheduled breaks during a workday, especially in the morning, and she would need to sit quietly or lay down. *Id.* at 546-547. Dr. Takacs further found that Plaintiff could occasionally lift less than ten pounds and she tried to not lift over five pounds due to back strain. *Id.* at 547. He also opined that Plaintiff could not work any hours during the day, and depending upon her pain levels, she could stand or sit up to fifteen minutes at a time, and stand/walk or sit up to two hours during the day. *Id.* He concluded that she could occasionally stoop, would need to frequently lie down during a workday, and she could never raise either arm over shoulder level. *Id.* He opined that Plaintiff had both good and bad days and she would be absent from

-8-

work more than four times a month due to her impairments. *Id.*

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician so long as that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "'be bewildered when told by an administrative bureaucracy that []he is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544 *(quoting Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir.1999)). Further, it "ensures that the ALJ applies the treating physician rule

and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

In giving "little weight" to Dr. Takacs' opinion, the ALJ found that his opinions were

> extreme and not supported by his own clinical findings. They are not supported by the exams from her treating and examining sources (see for example Exhibits 5F/3, 687; 6F/2; 11F/2, 4-7; 16F/24-25, 32, 39, 41, 68; and 28/F1, 7.) These sources have not indicated exams revealing multiple tender points, irritable bowel syndrome, widespread pain for three or more months, or chronic fatigue, the clinical symptoms identified by Dr. Takacs to support his opinion. They are not consistent with the claimant's testimony that she is able to do light household chores and independently cares for her 13-year old daughter.

Tr. at 19-20. The Court finds that substantial evidence does not support the weight that the ALJ gave to Dr. Takacs' opinion.

The ALJ first found that Dr. Takacs' opinion is not supported by his own clinical findings. Tr. at 19. However, he provides no citation to the clinical findings made by Dr. Takacs that contradict the limitations he indicated. The ALJ also found that the examinations from other treating and examining sources did not support Dr. Takacs' severe limitations. *Id.* at 19-20. But some of the support that the ALJ provides for this finding are examinations conducted in order to address other medical issues suffered by Plaintiff. For instance, the citation to Exhibit 6F/2 was an examination by Dr. DiMarco, a physician who examined Plaintiff regarding her breathing issues while trying to sleep. *Id.* at 249-250. Dr. DiMarco nevertheless noted that Plaintiff had joint pain and a history of fibromyalgia for which she was taking medication. *Id.* Further, the ALJ cites to a 2003 notation from a pain management clinic that Plaintiff's back pain was getting better and was well-treated with

-10-

medications. *Id.* at 19, citing Exhibit 5F/3. However, this notation precedes Dr. Takacs' findings and opinions by three years, so its reliability is questionable due to its remoteness. *Id.* at 546.

Nor does substantial evidence support the other evidence that the ALJ used to discount Dr. Takacs' findings. For instance, the ALJ cites to Exhibit 16F at 24-25, 32, 39, 41 and 68 which concern admissions to the hospital for conditions other than fibromyalgia. Exhibit 16/F at 32, 39, and 41 concern Plaintiff's admission into the hospital due to a suicide attempt by drug overdose in June 2004 and the physical examinations that accompanied her stay at the hospital. *Id.* at 363-364 (Exhibit 16/F at 32); 370 (Exhibit 16/F at 39); 372 (Exhibit 16/F at 41). Exhibit 16F/68 cited by the ALJ concerns Plaintiff's admission to the hospital in June 2003 for intractable vomiting. *Id.* at 396. And Exhibit 28/F at 1 and 7 cited by the ALJ mainly concerns Plaintiff's admission to the hospital in August 2004 for nausea and vomiting relating to the pain patch she had been wearing for her fibromyalgia. *Id.* at 577, 583. And while the physical examinations accompanying these hospital stays noted relatively intact and normal results, the Sixth Circuit has noted that fibromyalgia cannot be confirmed by objective testing, and usually presents with no objectively alarming signs and normal muscle strength, neurological reactions and full range of motion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, these examinations do not support the ALJ's decision to discount Dr. Takacs' findings.

The ALJ also cited to Exhibit 6F/2 in giving "little weight" to Dr. Takacs' findings. Tr. at 19, citing Exhibit 11F/2 at 4-7. This Exhibit is a consultative report and testing from examining physician Dr. Paras in which he finds that Plaintiff has no motor or sensory deficit or muscle atrophy. *Id.* at 284. Dr. Paras' manual muscle testing and the range of motion results accompany his report and those test results show no muscle spasm and relatively normal results. *Id.* at 286-287. However, as noted in *Rogers*, 486 F.3d at 243, fibromyalgia cannot be confirmed by objective testing, and usually presents

-11-

with no objectively alarming signs and normal muscle strength, neurological reactions and full range of motion. Moreover, Dr. Paras appears to have at least in part agreed with Dr. Takacs' more restrictive limitations in Plaintiff's RFC as he stated himself that "this claimants[sic] ability to perform work-related physical activities are limited by the constant muscle aches and pains aggravated by exertion..." *Id.* at 285.

Finally, the ALJ noted that the sources that he cited to discount Dr. Takas' opinion had not found multiple tender points, irritable bowel syndrome, widespread pain for three or more months or chronic fatigue as Dr. Takacs had found in order to support his findings and opinion. Tr. at 20. However, most of the evidence cited concerned other conditions suffered by Plaintiff that took precedence over her fibromyalgia at the time and therefore those symptoms and her fibromyalgia condition were not the focus. Further, the ALJ failed to discuss the evidence of record that did note Plaintiff's multiple tender points, including rheumatologist Dr. Molta's August 2002 examination in which he found "24 painful joints small and large joints and 12 swollen joints, as a sum of all peripheral joints examined, " and "multiple tender trigger points", which he believed showed that "clearly she has Fibromyalgia." *Id.* at 216. Dr. David Mandel, another rheumatologist, also diagnosed Plaintiff with fibromyalgia based upon "the presence of a number of diffuse tender trigger points." *Id.* at 203. Dr. Fantauzzo, Plaintiff's primary treating physician, also noted "paraspinal tenderness at every visit" and indicated that Plaintiff's diagnoses included fibromyalgia. *Id.* at 460, 477. He also referred Plaintiff to a pain management specialist in 2004 due to "the chronic pain related to fibromyalgia" and noted that Plaintiff had a prior pain management specialist. *Id.* at 474. His notes document Plaintiff's chronic pain as well. *Id.* at 481, 484-485.

Overall, it appears that the ALJ mainly relied upon the relatively normal objective findings and tests in determining Plaintiff's physical work-related abilities and in discounting Dr. Takacs'

findings and opinions. He cites not only to the records showing relatively normal objective findings and examinations, but he also specifically notes that "[p]rogress notes indicate very little significantly abnormal physical findings", "[t]here is no evidence of disuse or muscle atrophy", and he states that "[t]he claimant has been neurologically intact." Tr. at 18-19. Based upon *Rogers* and the findings above, this Court finds that the ALJ's decision to give "little weight" to the findings and opinions of Plaintiff's treating physician for the reasons he cited is not based upon substantial evidence.

Accordingly, the Court REMANDS this case for reexamination, reevaluation and further articulation by the ALJ in addressing his reasons for giving "little weight" to the findings and opinions of Dr. Takacs relating to Plaintiff's physical abilities to perform work-related activities based upon her fibromyalgia. The ALJ should consider the appropriate standard for considering fibromyalgia and its limitations, and the other medical evidence in the file in reevaluating his treatment of Dr. Takacs' findings and opinions.

### **2**. **DR. RODIO**

Plaintiff further contends that the ALJ erred in discounting the opinions of Dr. Rodio, her treating psychiatrist. ECF Dkt. #19 at 17-18. The Court agrees. In his April 13, 2006 assessment of Plaintiff's mental abilities to perform work-related activities, Dr. Rodio indicated that he had been treating Plaintiff since June 8, 2004 and she had been receiving regularly scheduled evaluations and care from him since that time. Tr. at 544. He indicated her diagnoses as panic disorder with agoraphobia, major depressive disorder in remission and opioid dependence in remission. *Id.* He opined that Plaintiff had marked impairment in the abilities to perform daily activities, perform activities within a schedule, respond appropriately to coworkers, respond to customary work pressures, and to behave in an emotionally stable manner. *Id.* at 543-544. He also opined that Plaintiff had severe limitations in her abilities to maintain concentration and attention for extended periods, and to respond appropriately to supervision. *Id.* He indicated that Plaintiff's medications

have some period of a sedating affect on her ability to function and her condition would likely deteriorate if she were to be placed under job stress. *Id.* at 544. He opined that Plaintiff would be absent from work more than three times per month due to her impairments. *Id*. He additionally commented that Plaintiff had a long history of depression that was worsened recently by the unexpected death of her sister. *Id*. He noted that Plaintiff was handling sobriety well but her residual panic and anxiety were most restrictive to her functional capacity, which caused withdrawal and avoidance of others. *Id*. He concluded that her anxiety was heightened by responsibility/pressure positions. *Id.*

In giving "little weight" to Dr. Rodio's April 13, 2006 assessment of Plaintiff's mental ability to perform work-related activities, the ALJ relied upon the testimony of Dr. Ross who found that Dr. Rodio's extreme limitations were inconsistent with his progress notes, the global assessment of functioning (GAF) scores assessed by other physicians, and the mental status examinations reported by other treating and examining sources. Tr. at 20. The ALJ first noted that Dr. Rodio's treatment notes showed that Plaintiff had made "significant improvement," that Ativan had effectively managed Plaintiff's anxiety, and that Plaintiff's major depressive disorder was in remission and she was feeling good or at least "OK." *Id.*

In discounting Dr. Rodio's assessment, the ALJ cites to only the most recent progress notes which do show improvement in Plaintiff's conditions with increased medication and an eventual diagnosis of major depressive disorder in remission. Tr. at 563-564. However, the ALJ fails to address the earlier medical records still within Plaintiff's request for benefits which showed that she attempted suicide in June 2004 and was admitted to the hospital, she had continuing difficulties with panic attacks and anxiety, and the progress notes of Dr. Rodio that showed a long period with no significant progress. The ALJ's citations to "examples" showing that Dr. Rodio's opinion was not consistent with mental status examinations by other medical sources is also inaccurate and

-14-

unsupported. The ALJ cites to "Exhibits 8F/17; 10F/3-4; 18F/4-5, 8; 28/F as the examinations of these other sources whose reports are inconsistent with Dr. Rodio's opinion. Tr. at 20. However, Exhibit 8F/17 is a mental status examination form where a counselor indicates that Plaintiff reported symptoms of depression on April 12, 2004 and she became tearful during the interview. *Id*. at 271. Exhibit 10F/3-4 is an assessment from examining psychologist Dr. Leach who does indicate that Plaintiff is only moderately impaired in her abilities to relate to others, maintain attention and concentration, persistence and pace, and to withstand the stresses and pressures of daily work activity. *Id.* at 281-282. However, the ALJ fails to address the rest of the conclusions by Dr. Leach as to these moderate findings. Dr. Leach indicates that Plaintiff's ability to relate to others is moderately impaired, but he further states that "[h]er current level of depressive symptoms and episodic anxiety attacks when she is forced to leave her home is likely to impact her ability to effectively communicate with others in the workplace." *Id.* at 281. He also indicates that while Plaintiff's ability to maintain attention, concentration, persistence and pace is moderately impaired, "[t]he nature of her depressed mood and ability to maintain her pace is likely to worsen with increasing stressors of daily work." *Id*. at 282. He indicates much the same with regard to Plaintiff's ability to withstand the stresses and pressures of daily work, indicating that it is moderately impaired, but concluding that "[i]t is likely that the mood disturbance this individual is presenting would be exacerbated by the stresses and pressures of daily work." *Id.*

Exhibit 18F/1-5 and 8 in the Court's record are not in the file. In fact, a notation on Exhibit 18F indicates that the pages had been removed because they belonged to another social security claimant. Tr. at 524. And finally, Exhibit 28F/2 is a discharge summary by Dr. Schilz who attended to Plaintiff during her admission to the hospital on August 8, 2004 for nausea, vomiting and pain from the withdrawal of her pain patch. *Id*. at 578. Other records in this admission show that Plaintiff was admitted because it was thought that she was suicidal due to her previous suicide attempt two months

-15-

earlier and the statement that she could not take vomiting anymore due to the pain and pain patch she was wearing. *Id.* at 589. At the time of this admission, Plaintiff was diagnosed with moderately severe and recurrent major depressive disorder and panic attacks. *Id.*

These Exhibits for the most part do not support the ALJ's discounting of Dr. Rodio's assessment. Moreover, the fact that other physicians had given Plaintiff GAFs that were high, which indicated only moderate or mild psychological symptoms, does not constitute substantial evidence supporting the ALJ's decision. The Sixth Circuit has noted that there is no statutory, regulatory, or other authority requiring an ALJ to put stock in a GAF score. *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 176 Fed. Appx. 496, 2006 WL 305648, at *14 (6th Cir. Feb. 9, 2006), unpublished, citing *e.g., Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002) (ALJ's failure to refer to GAF score did not make his RFC analysis unreliable). Moreover, even if the ALJ was correct in considering the GAFs which showed only moderate and in some cases mild symptoms, he fails to address the other instances where very low GAFs were reported, including a GAF of 42 assessed by the examining agency psychologist on July 7, 2004. Tr. at 281; *see also* Tr. at 358 (GAF of 40 on 6/16/04).

For these reasons, the Court finds that substantial evidence does not support the ALJ's treatment of Dr. Rodio's 2006 assessment. Accordingly, the Court REMANDS this case for reevaluation and further articulation and explanation of the weight given to Dr. Rodio's 2006 assessment, should the ALJ again choose to attribute "little weight" to the assessment.

### **C**.    **CREDIBILITY**

The Court also REMANDS the instant case for reexamination, evaluation and articulation by the ALJ of Plaintiff's credibility and complaints of pain. In discounting Plaintiff's complaints of pain and limitations, the ALJ notes the lack of evidence relating to "disuse or muscle atrophy", her normal gait, a negative lumbar spine MRI, progress notes which showed "very little significantly abnormal

-16-

physical findings" and the fact that Plaintiff was "neurologically intact." Tr. at 18-19. He also indicated that the "objective medical evidence does not reflect the existence of an impairment or combination of impairments which would produce the devitalizing symptoms alleged by the claimant." *Id*. at 19. As discussed above, such findings cannot be made in a fibromyalgia case, since objective medical evidence confirming pain or abnormality are generally lacking with fibromyalgia patients. *Rogers*, 486 F.3d at 248. The ALJ also noted that Plaintiff performs light household chores that do not require much bending, and that she cooks, cares for herself, her thirteen year-old daughter and a dog, and she drives. Tr. at 18. While the ALJ can consider household and social activities in assessing credibility and complaints of disabling pain, *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir.1993), a claimant's ability to "perform limited and sporadic tasks does not mean that he or she is capable of full-time employment." *Miller v. Comm'r of Soc. Sec*., No. 1:07CV759, 2008 WL 4445189, at *4, citing *Barker-Bair v. Comm'r of Soc. Sec*., 2008 WL 926569, at *11 (S.D.Ohio Apr. 3, 2008), citing *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir.2004); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998) ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.").

Since the ALJ appears to have based his assessment of Plaintiff's complaints of disabling pain on a lack of objective medical evidence to support the pain, and relatively limited personal activities, the Court finds that substantial evidence does not support the ALJ's credibility assessment. Accordingly, the Court REMANDS this case for a reassessment and better articulation of Plaintiff's complaints of disabling pain and limitations based upon the proper standards.

### D. DUE PROCESS

Plaintiff also asserts that her constitutional right to due process was violated because the notice of the ALJ hearing that she received did not inform her that the ALJ would be considering drug

addiction and alcoholism as an issue in the case.  ECF Dkt. #19 at 10.  Plaintiff cites HALLEX, the SSA Hearings, Appeals and Litigation Law Manual (HALLEX), and Social Security Regulations, and contends that the ALJ procedurally erred by considering this new issue that neither her nor her counsel could have anticipated at the hearing.  *Id*. at 11.  Plaintiff also asserts that her due process rights were violated because:

> When new evidence regarding the issue of drug and alcohol abuse arose in the form of medical expert Dr. Ross' unexpected (at least to the undersigned) testimony that Methadone was a narcotic drug to which Simerale was addicted, the ALJ should have adjourned the hearing in order to provide Simerale with written notice of drug addiction, as required by SSA's own regulations and procedure manual.

*Id*. at 11-12.  Plaintiff cites to testimony exchanged at the ALJ hearing between her counsel and the ALJ which she concludes make it clear that she and her counsel were "blindsided by Dr. Ross' testimony." *Id.* at 12.

In light of the fact that the Court has remanded this case as outlined above, the Court finds that this due process objection is rendered moot as Plaintiff "will presumably have the opportunity on remand to support [her] position with any evidence or argument previously foregone on that account" as she had alleged.  *See Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir. 2004).  Moreover, "a court presented with both statutory and constitutional grounds to support the relief requested should pass on the statutory claim before considering the constitutional question." *Califano v. Yamasaki*, 442 U.S. 682, 692, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)("[d]ue respect for the coordinate branches of government, as well as a reluctance when conscious of falliability to speak with our utmost finality [citation omitted], counsels against unnecessary constitutional adjudication.").

For these reasons, the Court declines to address Plaintiff's due process assertions.

**V.    CONCLUSION**

Based upon a review of the record, the ALJ's decision and the law and analysis provided above, the Court reverses and remands the instant case for the ALJ to reevaluate and further articulate and explain the adjudication of the materiality of Plaintiff's drug abuse/substance abuse disorder, including which drug or drugs it is that the ALJ is relying upon in making this determination.  The ALJ must also reconsider, reevaluate and better articulate his reasons for relying upon the testimony of the medical expert over the opinions of Plaintiff's treating physicians and reevaluate and better explain his reasons for the weight that he attributes to the opinions of Drs. Takacs and Rodio.  Finally, the Court remands this case so that the ALJ can reevaluate and better articulate his reasons for discounting Plaintiff's credibility and complaints of disabling pain and limitations.


Dated: February 20, 2009                                          */s/George J. Limbert*
                                                                              GEORGE J. LIMBERT
                                                                              U.S. MAGISTRATE JUDGE